**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **BUTLER DEKLE,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, AND ALLY FINANCIAL INC.,**<br><br>**Defendants.** | **Civil Action No. 2:26-cv-12472**<br><br>**With Jury Demand Endorsed** |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Butler Dekle ("Plaintiff"), by and through counsel, for Plaintiff's Complaint against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), and Ally Financial Inc. ("Ally"), jointly, severally, and in solido, state as follows:

## I. INTRODUCTION

1. Three of the Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Ally Financial Inc., is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants statutory and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2. Plaintiff a natural person residing in Metter, Georgia is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Equifax is a Georgia limited liability company that does substantial business in this Judicial District and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Experian does business in this Judicial District and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Trans Union is an Illinois limited liability company that does business in this Judicial District and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of

assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6. Upon information and belief, Defendant Ally is a Delaware limited liability company that does substantial business in this Judicial D0istrict and may be served by delivering a summons to its Legal Department at its headquarters, 500 Woodward Ave, Floor 10, Detroit, Michigan 48226. Ally is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and Trans Union.

## III. JURISDICTION AND VENUE

8. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9. Venue is proper in this District, because Equifax, Experian, Trans Union, and Ally transact business in this District. Ally's headquarters is located in this Judicial District, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because Equifax, Experian, and Trans Union entered into agreements with Furnisher Defendant in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute sent from Equifax, Experian, and Trans Union as part of Defendants' reinvestigations were submitted to Ally's headquarters and investigated by Ally using its resources located at or closely connected to this Judicial District. Ally managed Plaintiff's auto loan from this Judicial District including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

11. In or around December 2015, Plaintiff secured an auto loan with Ally and Ally assigned account number 673923***** ("Ally Auto").

12. In or around October 2021, Plaintiff secured an auto loan with Durden Bank and Durden Bank assigned account number 454184***** ("Durden Auto").

13. In or around May 2021 and October 2021, Plaintiff secured a loan for household goods with Farmers Furniture and Farmers Furniture assigned account number 145165***** ("Farmers Account").

14. Plaintiff has been timely on all loan payments since the accounts were open.

15. Due to unforeseen circumstances, Plaintiff needed to file for bankruptcy

protection under Chapter 13 of Title 11.

16. On or around February 9, 2022, Plaintiff filed for bankruptcy protection under Chapter 13 of Title 11.

17. A redacted copy of Plaintiff's Chapter 13 Bankruptcy docket report for Plaintiff's bankruptcy case is attached hereto as Exhibit A.

18. As part of Plaintiff's Chapter 13 Bankruptcy, it was determined that Plaintiff was to continue to pay on the Ally Auto account, Durden Auto account, and Farmers Account even after Plaintiff filed for bankruptcy.

19. The Chapter 13 Plan specifically details that Plaintiff was to make all these payments to the Bankruptcy Trustee, and the Trustee would disperse the payments to the appropriate creditors.

20. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Plan is attached hereto as Exhibit B.

21. During Plaintiff's bankruptcy, Plaintiff timely completed all the loan payments for the Ally Auto account, Durden Auto account, and Farmers Account, and Plaintiff is the free and clear owner of the automobile and household goods that was the security interest of the Ally Auto account, Durden Auto account, and Farmers Account.

22. On July 8, 2025, the Plaintiff was discharged from Chapter 13 Bankruptcy.

23. A redacted copy of Plaintiff's Chapter 13 Discharge Order is attached hereto as Exhibit C.

24. Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy court and/or trustee, timely monthly payments were made to the Ally Auto account, Durden Auto account, and Farmers Account.

25. Sometime in January 2026, Plaintiff obtained Plaintiff's three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate as it pertains to the Ally Auto account, Durden Auto account, and Farmers Account.

26. A redacted copy of Plaintiff's January 2026 tri-merge credit report is attached hereto as Exhibit D.

27. Within the Tri-Merge credit report, Plaintiff noticed that Equifax reported several inaccuracies for Plaintiff's Ally Auto account, Durden Auto account, and Farmers Account.

28. The Ally Auto account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of January 2022, a date of last activity of January 2022, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13 debt adj. Auto included in Chapter 13".

29. This report is incorrect because Plaintiff completed all the required loan payments for the Ally Auto account, Plaintiff is the free and clear owner of the automobile that was the security interest of the Ally Auto account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

30. The accurate reporting of the Ally Auto account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, a high balance of $16,448.00, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

31. The current reporting of the Ally Auto account materially misleads lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Ally Auto account and converted the Ally Auto loan to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

32. The current reporting of the Ally Auto account was never an "historically accurate" way to report the Ally Auto account.

33. The Durden Auto account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of February 2022, a date of last activity of February 2022, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13 debt adj. Auto included in Chapter 13".

34. This reporting is incorrect because Plaintiff completed all the required loan payments for the Durden Auto account, Plaintiff is the free and clear owner of the automobile that was the security interest of the Durden Auto account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

35. The accurate reporting of the Durden Auto account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, an accurate high balance, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

36. The current reporting of the Durden Auto account materially misleads lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Durden Auto account and converted the Durden Auto account to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

37. The current reporting of the Durden Auto account was never an "historically accurate" way to report the Durden Auto account.

38. The Farmers Accounts were reporting a payment status of "Wage Earner Plan", a date of last payment of January 2022, a date of last activity of January 2022, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13 debt

adj. Auto included in Chapter 13".

39. This reporting is incorrect because Plaintiff completed all the required loan payments for the Farmer Accounts, Plaintiff is the free and clear owner of the household goods that was the security interest of the Farmers Accounts, and the current reporting is a significant misrepresentation of this fully paid and closed account.

40. The accurate reporting of the Farmers Accounts would have been to report a payment status of "Current", a date of last activity as of the last payment date, a high balance of $2,789.00, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

41. The current reporting of the Farmers Accounts materially mislead lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Farmers Accounts and converted the Farmers Account to unsecured debts and discharged the debts by way of Plaintiff's Chapter 13 Bankruptcy.

42. The current reporting of the Farmers Accounts was never an "historically accurate" way to report the Farmers Accounts.

43. Within the Tri-Merge credit report, Plaintiff noticed that Experian reported several inaccuracies for Plaintiff's Ally Auto account and Farmers Accounts.

44. The Ally Auto account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a blank date of last payment a date of last activity of February 2022, and within the creditor remarks it was reporting the "Debt included in or discharged through Bankruptcy Chapter 13.".

45. This reporting is incorrect because Plaintiff completed all the required loan payments for the Ally Auto account, Plaintiff is the free and clear owner of the automobile that

was the security interest of the Ally Auto account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

46. The accurate reporting of the Ally Auto account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

47. The current reporting of the Ally Auto account materially misleads lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Ally Auto account and converted the Ally Auto loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

48. The current reporting of the Ally Auto account was never an "historically accurate" way to report the Ally Auto account.

49. The Farmers Accounts were reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a blank date of last payment, a date of last activity of February 2022, and within the creditor remarks it was reporting the "Debt included in or discharged through Bankruptcy Chapter 13.".

50. This reporting is incorrect because Plaintiff completed all the required loan payments for the Farmers Accounts, Plaintiff is the free and clear owner of the household goods that was the security interest of the Farmers Accounts, and the current reporting is a significant misrepresentation of this fully paid and closed account.

51. The accurate reporting of the Farmers Accounts would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date and should have reported within the creditor remarks section "Auto closed or

paid account/zero balance".

52. The current reporting of the Farmers Accounts materially misleads lenders to believe Plaintiff surrendered the household goods that was/is the security interest of the Farmers Account and converted the Farmers Accounts to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

53. The current reporting of the Farmers Accounts were never an "historically accurate" way to report the Farmers Accounts.

54. Within the Tri-Merge credit report, Plaintiff noticed that Trans Union reported several inaccuracies for Plaintiff's Ally Auto account and Farmers Accounts.

55. The Ally Auto account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of December 2022, a date of last activity of December 2022, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

56. This reporting is incorrect because Plaintiff completed all the required loan payments for the Ally Auto account, Plaintiff is the free and clear owner of the automobile that was the security interest of the Ally Auto account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

57. The accurate reporting of the Ally Auto account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

58. The current reporting of the Ally Auto account materially misleads lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Ally Auto

account and converted the Ally Auto account to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

59. The current reporting of the Ally Auto account was never an "historically accurate" way to report the Ally Auto account.

60. The Farmers Accounts was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

61. This reporting is incorrect because Plaintiff completed all the required loan payments for the Farmers Accounts, Plaintiff is the free and clear owner of the automobile that was the security interest of the Farmers Accounts, and the current reporting is a significant misrepresentation of this fully paid and closed account.

62. The accurate reporting of the Farmers Accounts would have been to report a payment status of "Current", an account rating of "Paid/Closed", and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

63. The current reporting of the Farmers Accounts materially misleads lenders to believe Plaintiff surrendered the household goods that was/is the security interest of the Farmers Accounts and converted the Farmers Accounts to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

64. The current reporting of the Farmers Accounts was never an "historically accurate" way to report the Farmers Accounts.

65. On or about February 22, 2026, Plaintiff sent direct disputes to Equifax, Experian, and Trans Union and requested that Equifax, Experian, and Trans Union investigate the reporting of the Ally Auto account, Durden Auto account, and Framers Accounts, and Plaintiff specifically

addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiff requested that under the FCRA, Equifax, Experian, and Trans Union conduct reasonable investigations and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Ally Auto account, Durden Auto account, and Farmers Accounts.

66. Redacted copies of Plaintiff's unsigned dispute letters sent to CRAs are attached hereto as Exhibits E, F, and G.

67. Equifax failed to respond to Plaintiff's dispute, so Plaintiff requested an updated consumer report to see if any changes were made to Plaintiff's Consumer Report.

68. The updated Consumer Report showed that Equifax made none of the substantive changes Plaintiff requested in the direct dispute to Equifax, and continued to report the Ally Auto account, Durden Auto account, and Farmers Accounts inaccurately.

69. The Ally Auto account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of January 2022, a date of last activity of January 2022, a high balance of $0.00, and within the creditor remarks it was reporting the "Account previously in dispute – now resolved by data furnisher Account involved in Chapter 13 debt adj. Included in Chapter 13".

70. The Durden Auto account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of February 2022, a date of last activity of October 2021, a high balance of $0.00, and within the creditor remarks it was reporting the "Account previously in dispute – now resolved by data furnisher Account involved in Chapter 13 debt adj. Included in Chapter 13".

71. The Farmers Accounts continued to report a payment status of "Wage Earner Plan", a date of last payment of March 2022, a date of last activity of March 2022, a high balance

of $0.00, and within the creditor remarks it was reporting the "Account previously in dispute – now resolved by data furnisher Account involved in Chapter 13 debt adj. Included in Chapter 13".

72. Equifax's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Ally Auto account, and Durden Auto account, and Farmers Accounts and gave no explanation as to why the Ally Auto account, and Durden Auto account, and Farmers Accounts were still reporting inaccurately.

73. Plaintiff's inaccurate Equifax consumer report was disseminated to third parties before and/or after the instant dispute.

74. The current reporting of the Ally Auto account, and Durden Auto account, and Farmers Accounts materially misleads lenders to believe Plaintiff surrendered the automobile and household goods that was the security interest of the Ally Auto account, and Durden Auto account, and Farmers Accounts and converted the Ally Auto account, and Durden Auto account, and Farmers Accounts loan to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

75. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Ally Auto account, and Durden Auto account, and Farmers Accounts.

76. Upon the Plaintiff's request to Equifax for verification and correction regarding the Ally Auto account, and Durden Auto account, and Farmers Accounts, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Ally Auto account, and Durden Auto account, and Farmers Accounts substantially or reasonably.

77. Equifax has adopted the Metro 2 reporting standard, Equifax deviated from the standard based on its conduct in this case, and by Equifax deviating from the adopted standard, Equifax injured Plaintiff's credit standing.

78. In the alternative, Equifax failed to contact Ally, Durden Bank, and Farmers Furniture, therefore, failed to perform any investigation at all.

79. In the alternative to the allegation that Equifax failed to contact Ally, Durden Bank, and Farmers Furniture, it is alleged that Equifax did forward some notice of the dispute to Ally, Durden Bank, and Farmers Furniture, and Ally, Durden Bank, and Farmers Furniture failed to conduct a lawful investigation.

80. Ally, Durden Bank, and Farmers Furniture knows how to report the Ally, Durden Bank, and Farmers Furniture accurately, and their response to Equifax, Experian, and Trans Union was willfully reckless.

81. Ally, Durden Bank, and Farmers Furniture knows the current reporting of the Ally, Durden Bank, and Farmers Furniture materially misleads lenders to believe Plaintiff surrendered the automobile and household goods that was the security interest of the Ally, Durden Bank, and Farmers Furniture and converted the Ally, Durden Bank, and Farmers Furniture to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

82. Ally, Durden Bank, and Farmers Furniture knows the current reporting of the Ally, Durden Bank, and Farmers Furniture was never an "historically accurate" way to report the Ally, Durden Bank, and Farmers Furniture.

83. Experian failed to respond to Plaintiff's dispute, so Plaintiff requested an updated consumer report to see if any changes were made on Plaintiff's Consumer Report.

84. The updated Consumer Report showed that Experian made none of the substantive

changes Plaintiff requested in the direct dispute to Experian and continued to report Plaintiff's Ally Auto account and Farmers Accounts inaccurately.

85. The Ally Auto account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a blank date of last payment a date of last activity of February 2022, and within the creditor remarks it was reporting the "Account was in dispute – now resolved – reported by subscriber. Debt included in or discharged through Bankruptcy Chapter 13.".

86. The Farmers Accounts continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a blank date of last payment a date of last activity of February 2022, and within the creditor remarks it was reporting the "Account was in dispute – now resolved – reported by subscriber. Debt included in or discharged through Bankruptcy Chapter 13.".

87. Experian's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Ally Auto account and Farmers Accounts and gave no explanation as to why the Ally Auto account and Farmers Accounts were still reporting inaccurately.

88. Plaintiff's inaccurate Experian consumer report was disseminated to third parties before and/or after the instant dispute.

89. The current reporting of the Ally Auto account and Farmers Accounts materially misleads lenders to believe Plaintiff surrendered the automobile and household goods that was the security interest of the Ally Auto account and Farmers Accounts and converted the Ally Auto account and Farmers Accounts to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

90. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Ally Auto account and Farmers Accounts.

91. Upon the Plaintiff's request to Experian for verification and correction regarding the Ally Auto account and Farmers Accounts, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Ally Auto account and Farmers Accounts substantially or reasonably.

92. Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiff's credit standing.

93. In the alternative, Experian failed to contact Ally, and Farmers Furniture, therefore, failed to perform any investigation at all.

94. In the alternative to the allegation that Experian failed to contact Ally and Farmers Furniture, it is alleged that Experian did forward some notice of the dispute to Ally and Farmers Furniture, and Ally and Farmers Furniture failed to conduct a lawful investigation.

95. Ally and Farmers Furniture knows how to report the Ally Auto account and Farmers Accounts accurately, and their response to Ally and Farmers Furniture was willfully reckless.

96. Ally and Farmers Furniture knows the current reporting of the Ally Auto account and Farmers Accounts materially misleads lenders to believe Plaintiff surrendered the automobile and household goods that was the security interest of the Ally Auto account and Farmers Accounts and converted the Ally Auto account and Farmers Accounts to an unsecured debt and

discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

97. Furnisher Defendant knows the current reporting of the Ally Auto account and Farmers Accounts was never an "historically accurate" way to report the Ally Auto account and Farmers Accounts.

98. Trans Union failed to respond to Plaintiff's dispute, so Plaintiff requested an updated consumer report to see if any changes were made on Plaintiff's Consumer Report.

99. The updated Consumer Report showed that Trans Union made none of the substantive changes Plaintiff requested in the direct dispute to Trans Union and continued to report Plaintiff's Ally Auto account and Farmers Accounts inaccurately.

100. The Ally Auto account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of December 2022, a date of last activity of December 2022, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

101. The Farmers Accounts continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of May 2024, a date of last activity of July 2025, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

102. Trans Union's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Ally Auto account and Farmers Accounts and gave no explanation as to why the Ally Auto account and Farmers Accounts was still reporting inaccurately.

103. Plaintiff's inaccurate Trans Union consumer report was disseminated to third parties before and/or after the instant dispute.

104. The current reporting of the Ally Auto account and Farmers Accounts materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally Auto account and Farmers Accounts and converted the Ally Auto account and Farmers Accounts to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

105. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Ally Auto account and Farmers Accounts.

106. Upon the Plaintiff's request to Trans Union for verification and correction regarding the Ally Auto account and Farmers Accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Ally Auto account and Farmers Accounts substantially or reasonably.

107. Trans Union has adopted the Metro 2 reporting standard, Trans Union deviated from the standard based on its conduct in this case, and by Trans Union deviating from the adopted standard, Trans Union injured Plaintiff's credit standing.

108. In the alternative, Trans Union failed to contact Ally and Farmers Accounts, therefore, failed to perform any investigation at all.

109. In the alternative to the allegation that Trans Union failed to contact Ally and Farmers Accounts, it is alleged that Trans Union did forward some notice of the dispute to the Ally and Farmers Accounts, and Ally and Farmers Accounts failed to conduct a lawful investigation.

110. Ally and Farmers Accounts know how to report the Ally Auto account and

Farmers Accounts accurately, and their response to the CRA was willfully reckless.

111. Ally and Farmers Accounts know the current reporting of the Ally Auto account and Farmers Accounts materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Ally Auto account and Farmers Accounts and converted the Ally Auto account and Farmers Accounts to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

112. Ally and Farmers Accounts know the current reporting of the Ally Auto account and Farmers Accounts was never an "historically accurate" way to report the Ally Auto account and Farmers Accounts.

113. Plaintiff elected to obtain an updated copy of Plaintiff's credit reports due to Equifax, Experian, and Trans Union's responses, or lack thereof responses.

114. A redacted copy of Plaintiff's April 2026 Tri-Merge credit report is attached hereto as Exhibit H.

115. Based Plaintiff's April 2026 Tri-Merge credit report, it was apparent that CRA Defendant(s) made none of the substantive changes Plaintiff requested in the direct dispute to the CRA Defendant(s), failed to update the Ally Auto account, Durden Auto account, and Farmers Accounts after the Chapter 13 Bankruptcy was discharged.

## V. GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

116. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

117. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable

procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

118. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

119. Equifax knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiff.

120. Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

121. After Equifax knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Ally Auto tradeline, Durden Auto tradeline, and Farmers tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

122. As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a

false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Equifax to comply with Equifax's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Equifax; loss of self-esteem because of Equifax's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Equifax.

123. Equifax's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

124. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

125. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

126. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information

to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

127. As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Equifax to comply with Equifax's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Equifax; loss of self-esteem because of Equifax's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Equifax.

128. Equifax's conduct, action, and inaction, were willful, rendering it liable for statutory damages, and punitive damages in an amount to be determined by the Court pursuant to

15 U.S.C. § 1681n.

129. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

130. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

131. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

132. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

133. Experian knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiff.

134. Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

135. After Experian knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Ally Auto tradeline and Farmers tradeline(s), it failed to make the corrections as would be required to attain "maximum possible

accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

136. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Experian to comply with Experian's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Experian; loss of self-esteem because of Experian's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Experian.

137. Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

138. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

139. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

140. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

141. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Experian to comply with Experian's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and

attempting to decipher letters, reports, and other instruments provided by Experian; loss of self-esteem because of Experian's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Experian.

142. Experian's conduct, action, and inaction, were willful, rendering it liable for statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

143. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

144. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

145. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

146. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

147. Trans Union knew or should have known of Plaintiff's bankruptcy status, history,

and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

148. Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

149. After Trans Union knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Ally Auto tradeline and Farmers tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

150. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Trans Union to comply with Trans Union's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Trans Union; loss of

self-esteem because of Trans Union’s continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff’s credit in light of the damage done to it continuously by Trans Union.

151. Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

152. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**TRANS UNION’S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

153. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

154. Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff’s credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff’s credit file, and relying upon verification from a source it has reason to know is unreliable.

155. As a result of Trans Union’s conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff’s ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and

embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Trans Union to comply with Trans Union's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Trans Union; loss of self-esteem because of Trans Union's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Trans Union.

156. Trans Union's conduct, action, and inaction, were willful, rendering it liable for statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

157. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**ALLY'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

158. Ally violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting

agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

159. Ally further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ally Auto account within Plaintiff's credit files with Equifax, Experian, and Trans Union and failing to fully and properly investigate the Plaintiff's dispute of the Ally Auto account, failing to accurately respond to Equifax, Experian, and Trans Union, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Ally Auto account within the consumer reporting agencies reports.

160. As a result of Ally's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Ally to comply with Ally's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Ally; loss of self-esteem because of Ally's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when

considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Ally.

161. Ally's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

162. Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII. DAMAGES

163. Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Michigan.

164. Plaintiff respectfully requests that this Honorable Court award Plaintiff's litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

165. The above and foregoing actions, inactions, and faults of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

166. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reporting about the Plaintiff and have been a substantial factor in causing credit denials and other damage.

167. Plaintiff suffered a variety of damages, including economic and non-economic damage as prayed for herein.

168. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

169. Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking

additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff prays that this Honorable Court:

A. Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Ally Financial Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiff's credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C. Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D. Order that CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Ally Financial Inc., work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and

concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiff might show Plaintiff is justly entitled.

Date Filed: July 20, 2026

Respectfully submitted,

*/s/ Blake R. Bauer*
Blake R. Bauer
MN Bar Number 0396262
FCRA-TX@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

***Lead Counsel for Plaintiff***

***COUNSEL FOR PLAINTIFF***

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

July 20, 2026 *
Date

*/s/ Blake R. Bauer*
Blake R. Bauer